IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
10/16/2026
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

GRAYSON COTES, )
)
Plaintiff, ) Civil Action No. 7:26-cv-00715
)
v. ) **MEMORANDUM OPINION**
)
CARILION HEALTHCARE )
CORPORATION, *et al.*, ) By: Hon. Thomas T. Cullen
) United States District Judge
Defendants. )

---

Plaintiff Grayson Cotes, proceeding *pro se*, filed this action against Carilion Healthcare Corporation, Carilion Clinic, and Carilion employees Catherine Townley, Kristen Semones, Ciera Yates, Demetrius E. Terry, Darryl Deweese, and Nicholas C. Conte. (*See generally* Compl. [ECF No. 1].) Cotes asserts two federal claims: a First Amendment claim and a discrimination claim under Title VI of the Civil Rights Act of 1964. He also brings nine state-law claims, alleging various instances of retaliation for reporting religious-based harassment, operational hazards, medical malpractice, and defamation that occurred during his employment with the Carilion Clinic Transport Department at Roanoke Memorial Hospital.

This matter is before the court on Cotes's motion for leave to proceed *in forma pauperis*. Because the court finds that Cotes's application satisfies the necessary standard, the court will grant his motion. But after undertaking its independent duty to screen initial filings under 28 U.S.C. § 1915(e), the court will dismiss Cotes's action in its entirety.

## I. <u>STATEMENT OF FACTS AND PROCEDURAL BACKGROUND</u>

The following facts are taken from Cotes's Complaint and accompanying exhibits, and, for the purpose of screening Cotes's claims under § 1915, the court applies a liberal 12(b)(6) standard and accepts these facts as true. 28. U.S.C. § 1915(e)(2)(B)(ii); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

This matter arises from alleged incidents of religious harassment that occurred during Cotes's employment with the Transport Department at Carilion's Roanoke Memorial Hospital and retaliation for reporting religious harassment and workplace hazards.

Cotes is a Satanist and has been a member of the Satanic Temple since late 2024 or early 2025. (Compl. ¶ 35.) Until September 10, 2026, he was employed with the Carilion Transport Department at Roanoke Memorial Hospital. (Compl. ¶ 36; *see* ECF No. 3-3.) His duties included delivering equipment, items, and morgue stretchers, and transporting patients to certain areas in the hospital. (Compl. ¶ 38.) Mr. Deweese, Ms. Semones, Mr. Terry, Ms. Yates, and Ms. Townley were Cotes's supervisors. (*Id.* ¶ 44.)

Cotes claims that he experienced "harassment and bullying" from a co-worker while employed at Carilion and reported this to his supervisors. (*Id.* ¶¶ 46–48.) Cotes explained to Ms. Yates that this harassment violated his religious beliefs. (*Id.* ¶ 48.) Cotes claims that Ms. Yates "insinuated that Mr. Cotes could lose his job over such," (*Id.* ¶ 49), and that Mr. Terry "immediately started to treat [Cotes] differently and started acting much less friendly" after learning of Cotes's religious identity. (*Id.* ¶ 47.)

Cotes identifies another incident when he was "harassed and belittled" by his co-worker and Ms. Yates for mishandling a crash cart. (*Id.* ¶¶ 50–52.) He claims that he informed

Ms. Yates that another employee had improperly trained him on handling the crash cart, "yet they attempted to make the situation look as if [he] was being sneaky or something." (*Id.* ¶¶ 52–53.) Cotes states that Defendants punished him for this incident, though the employee who trained him did not face repercussions. (*Id.* ¶ 54.)

Next, Cotes alleges various legal and ethical violations he witnessed during his employment at the hospital. Cotes claims that Carilion employees discharged a patient against medical advice and that Defendants instructed Cotes to leave such patients on the street rather than to wait with them until their transportation arrived. (*Id.* ¶¶ 55–60.) He further claims that he reported this patient discharge incident to Ms. Yates who told him not to make a formal report. (*Id.* ¶ 59.)

Cotes's Complaint recounts other purported operational failures that allegedly placed patients in unsafe, dangerous conditions. (*Id.* ¶¶ 61–72.) Cotes claims that Mr. Deweese also instructed him not to make a formal report of the issues he witnessed. (*Id.* ¶ 67.) Cotes alleges that other Clinic Transport Department employees have reported similar instances to their supervisors, but that these reports have all been ignored. (*Id.* ¶ 73.) Further, Cotes claims that Carilion employees placed patient-specific information on a sticker in a staff elevator. (*Id.* ¶ 74.)

On August 17, 2026, Mr. Deweese "attempted to force" Cotes to search for Clinic Transport carts that had gone missing during his shift despite Cotes's protests that retrieving the carts "would interfere with the respective nurses' ability to provide proper patient care." (*Id.* ¶¶ 75–83.) Cotes informed Mr. Deweese that "it would violate Mr. Cotes'[s] religious beliefs to continue to force external will upon Mr. Cotes'[s] body without Mr. Cotes'[s]

permission." (*Id.* ¶ 83.) Cotes showed Mr. Deweese his Satanic Temple membership card and the tenets he follows, but he alleges that Mr. Deweese stated that he did not care and that if Cotes continued to ignore Mr. Deweese's instructions he would be sent home. (*Id.* ¶¶ 84, 86.)

Cotes ended his shift and called Ms. Townley and Ms. Semones to inform them of his negative encounter with Mr. Deweese and to report a previous incident during which Cotes slipped on a puddle of water and injured himself. (*Id.* ¶¶ 88–95.) Cotes states that Ms. Semones "recognized that he was having a mental[-]health moment." (*Id.* ¶ 96.) He then contacted Carilion's Employee Assistance Program ("EAP") and spoke with an EAP employee. (*Id.* ¶ 97.)

Cotes filed an EEOC complaint on August 19, 2026, alleging discrimination by his supervisors. (*Id.* ¶ 98.) He returned to work on August 21, 2026, where Cotes alleges Defendants harassed him about his religious beliefs until he "br[oke] down and start[ed] crying." (*Id.* ¶¶ 101–04.) Cotes requested paid time off for the weekend and was set to return to work the following Friday. (*Id.* ¶¶ 105–06.) On August 27, 2026, Ms. Townley contacted Cotes over text message and informed him that he needed to speak with Ms. Townley before he would be permitted to return to work. (ECF No. 3 at 1.) Cotes informed Ms. Townley that he did not have time to speak with her, that he planned to or had already reported Defendants to the Occupational Safety and Health Administration ("OSHA") and the Virginia Occupational Safety and Health Program ("VOSH"), and that he would be returning to work the following day as planned. (ECF No. 3 at 1; Compl. ¶ 106.)

On August 28, 2026, Ms. Townley informed Cotes that a written warning for failure to follow supervisory instructors had been issued and that he was not permitted to return to

work or the hospital premises until he was cleared by EAP. (ECF No. 3 at 1; Compl. ¶ 107.) Ms. Townley stated that Cotes had ignored his supervisors' calls, but Cotes claims that they were aware of his schedule and yet called him during times when he was asleep or in class. (ECF No. 3 at 1; Compl. ¶ 108.) He alleges that he reached out to EAP and Human Resources but only received a response from EAP stating that the office could not accommodate a virtual meeting. (Compl. ¶ 109.) Cotes claims that he received no response from his supervisors despite attempting to contact them through text messages and phone calls. (*Id.* ¶ 110–15.) On September 9, 2026, he received an email from Ms. Townley "falsely accusing" Cotes of coming onto Carilion property and for harassing his supervisors with text messages. (*See* ECF Nos. 3, 3-1; Compl. ¶ 115.) When Cotes filed this Complaint, he had not yet been terminated; however, the exhibits produced along with his filing indicate that Cotes's employment was terminated on September 10, 2026. (*See* ECF No. 3-3.)

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e), which governs *in forma pauperis* proceedings, the court has a duty to screen initial filings. *See Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656–57 (4th Cir. 2006). When screening, the court should liberally construe the filings of *pro se* litigants, using a "less stringent standard[] than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). But even a *pro se* complainant must still state a plausible claim for relief, *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and the court must dismiss a case "at any time" if the court determines that the complaint "fails to state a claim on which relief may be granted[.]" 28 U.S.C. § 1915(e)(2)(B)(ii).

The standards for reviewing a complaint for dismissal under § 1915(e)(2)(B)(ii) are the same as those that apply when a defendant moves for dismissal under Federal Rule of Civil Procedure 12(b)(6)—failure to state a claim on which relief may be granted. *See De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). Thus, in reviewing a complaint under this statute, the court must accept all well-pleaded factual allegations as true and view the complaint in the light most favorable to the plaintiff. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

Federal courts also "have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Melton v. Naumann*, No. 25-3343-BAH, 2025 WL 2938362, at *2 (D. Md. Oct. 16, 2025) (granting motion for leave to proceed *in forma pauperis* but dismissing complaint due to lack of subject-matter jurisdiction).

## III. DISCUSSION

### A. Subject-Matter Jurisdiction

At the threshold, the court must determine that it has subject-matter jurisdiction. *See Melton*, 2025 WL 2938362, at *2. The court finds that it does not—either based on federal question or diversity.

Cotes's Complaint alleges two federal and nine Virginia state-law claims.[1] Cotes asserts that the court has subject-matter jurisdiction over these state-law claims under the court's supplemental jurisdiction, *see* 28 U.S.C. § 1367. (Compl. ¶¶ 2–3.) But for the reasons stated below, the court must dismiss Cotes's two federal law claims, leaving his nine state-law claims remaining. Having dismissed all claims over which it has original jurisdiction, *see id.* § 1367(c)(3), the court declines to exercise supplemental jurisdiction over the remaining state-law claims.

Moreover, Cotes's Complaint does not establish that the court has subject-matter jurisdiction over these state-law claims based on diversity, *see id.* § 1332. The alleged amount in controversy is $8.23 billion; however, Cotes is a citizen of Virginia (Compl. ¶ 4), and Defendants Carilion Clinic and Carilion Healthcare Corporation are Virginia corporations. *Coles v. Carilion Clinic*, 894 F. Supp. 2d 783, 786 (W.D. Va. 2012). Cotes's Complaint does not contain facts establishing the individual defendants' citizenship.[2] The court therefore finds that the Complaint does not plead sufficient facts for the court to exercise subject-matter

[1] Cotes brings three of the nine claims under Virginia's criminal statutes: Va Code. §§ 18.2-417, 18.2-369, 37.2-429.

[2] The court notes that the addresses provided for service of process upon the individual defendants are all located in Virginia.

jurisdiction over the remaining state law claims and the court will dismiss Cotes's action in its entirety.

**B. Count I: Violation of 42 U.S.C. § 2000d (Title VI) against all Defendants**

Cotes fails to state a plausible claim under Title VI of the Civil Rights Act of 1964. Cotes's claim is based on "religious-based discrimination." (*See generally* Compl.) But Title VI, *see* 42 U.S.C. § 2000d, provides that "no person in the United States shall, **on the ground of race, color, or national origin**, be excluded from participation in, be denied the benefits of or be subjected to discrimination under any program or activity receiving Federal financial assistance." (emphasis added). Here, Cotes's claim is only supported by allegations of religious-based discrimination and therefore is not actionable under the statute. Because Cotes has not stated an actionable Title VI claim, the court will dismiss the claim against all Defendants.

**C. Count III: Interfering with Freedom of Religion in Violation of the First Amendment Against all Defendants**

Cotes's First Amendment claim against all Defendants also fails because he has not established any state action.

Cotes raises a First Amendment claim for "interfering with plaintiff's freedom of religion" against Carilion Healthcare Corporation and Carilion Clinic. (Compl. ¶ 12.) Cotes also brings this claim against six individuals—all employees of Carilion Clinic and Carilion Healthcare Corporation. (*Id.* ¶¶ 6–12.) In Cotes's Complaint he alleges that Defendants "retaliated against him because of his religious beliefs." (*Id.* ¶ 1.) The court interprets this allegation to assert a First Amendment retaliation claim. *See Buxton v. Kurtinitis*, 862 F.3d 423, 427 (4th Cir. 2017). To state a valid claim for First Amendment retaliation, the plaintiff must show that they (1) "'engaged in protected First Amendment activity,' (2) 'the defendants took

some action that adversely affected [the plaintiff's] First Amendment rights,' and (3) 'there was a causal relationship between [the plaintiff's] protected activity and the defendants' conduct.'" *See Buxton*, 862 F.3d 423 at 427 (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005)). Private actors are generally not liable under the First Amendment unless their conduct constitutes state action. *See Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808–09 (2019) ("The threshold problem with that First Amendment claim is a fundamental one: MNN is a private entity."). A private entity may qualify as a state actor in the following limited circumstances: "(i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity." *See id.* at 809 (citations omitted). "A plaintiff bears the burden of showing that the actions of a private entity should be attributed to the state." *Fuller v. Carilion Clinic*, No. 7:17-cv-564, 2018 WL 5500242, at *5 (W.D. Va. Oct. 29, 2018).

Here, Cotes's allegations do not come close to satisfying the threshold requirement of establishing state action to support a valid First Amendment claim. Carilion Healthcare Corporation and Carilion Clinic are both private entities. *See Demasters v. Carilion Clinic*, 796 F.3d 409, 413 (4th Cir. 2015) (describing Carilion as "a large healthcare organization that owns and operates several hospitals"); *Coles v. Carilion Clinic*, 894 F. Supp. 2d 783, 786 (W.D. Va. 2012) (identifying Carilion Clinic and Carilion Medical Center as "corporations doing business in Virginia"); *see also Fuller*, 2018 WL 5500242, at *5 (considering Carilion Clinic a state actor purely for the purpose of determining whether its private police officers may be considered state actors under the public function theory). Cotes's Complaint does not allege facts to

support a plausible inference that Carilion Clinic or Carilion Healthcare Corporation or any of its employees should be considered state actors for purposes of this claim. *See Fuller*, 2018 WL 5500242, at *5. His allegations of religious-based retaliation recount interpersonal interactions with Carilion Transport and nursing staff during his employment with the Carilion Clinic Transport Department. (Compl. ¶¶ 37, 47–49.) For example, Cotes alleges, "[O]nce I revealed my religion to Mr. Terry, he immediately started to treat me differently and started acting much less friendly." (*Id.* ¶ 47.) Similarly, he claims that when he reported to his supervisor, Ms. Yates, that it was against his religious beliefs to endure harassment from a co-worker, she "insinuated that Mr. Cotes could lose his job over such." (*Id.* ¶¶ 48–49.) In an altercation with another supervisor, Mr. Deweese, Cotes informed him that "it would violate Mr. Cotes'[s] religious beliefs to continue to force external will upon Mr. Cotes'[s] body without Mr. Cotes'[s] permission," to which Mr. Deweese stated that he did not care. (*Id.* ¶¶ 83–84.)

These allegations do not establish that Carilion and its employees were performing a traditional, exclusive public function, that their actions were extensively regulated by the government, or the presence of any joint state involvement. *See Manhattan Cmty. Access Corp.*, 587 U.S. at 809; *Fuller*, 2018 WL 5500242, at *6 ("It is not enough that a private entity performs a function which serves the public") (citing *Mentavlos v. Anderson*, 249 F.3d 301, 317 (4th Cir. 2001)). Instead, Cotes's allegations, if true, describe private acts of intolerance and fail to demonstrate that Carilion functioned as a state actor during these private workplace encounters, or that any of the defendants' actions can be attributed to the state. *See Fuller*, 2018 WL 5500242, at *5. Accordingly, Cotes has failed to state a viable First Amendment claim, and the court will dismiss it.

## IV. CONCLUSION

Because Cotes's Complaint is devoid of facts to support the claims arising under federal law and the court lacks subject-matter jurisdiction over the remaining state-law claims, the court will dismiss Cotes's Complaint in its entirety.

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 16th day of October, 2026.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE